manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the court is now sitting. God save the United States and this Honorable Court. Please be seated. Mr. Harris, are you ready? May it please the court. I'm Paul Harris, counsel for the appellants Judson Phillips, Capital Compliance Group, Music City Ventures, Steve Huffman and John Preston Thompson. We maintain the district court erred in granting plaintiff a default in its January 4, 2022 order and then a subsequent default judgment. We contend the sanction of default was too harsh imposed by the district court and we focus our argument on the Fourth Circuit's case of Hathcock versus Navistar. So it was you you think the sanction was too harsh? Would there, should there have been a sanction at all in your view? I think the district court was within its discretion to issue a lesser sanction as an initial sanction. Well there were initial sanctions, weren't there? I don't believe so, your honor. Striking your defenses? That's what, that's what we contend, I'm sorry judge, that's what we contend was the default order. The January 4, 2022 order by the district court where the court struck the defenses and ordered a trial on the issue of damages only to a jury. So it was essentially a default order, although it wasn't titled that. It had the procedural effect of that and so before that time there was no order issued by, recommended by the magistrate judge or issued by the district court imposing any lesser sanction. But didn't the, didn't the district court or the magistrate judge at least give you some warning that there, you know, there's been a history of motions to compel and he was asked or she, I don't know if it was he or she, was asked to impose sanctions and the magistrate judge essentially said they're not appropriate at this time. The clear indication being that they would be appropriate down the road. So this is not a case where a party is being surprised by a sanction. I'll grant you it's a pretty severe sanction but your client was on notice, wasn't it? Well judge, the magistrate judge's recommended decision only related to two of the appellants, Mr. Phillips and Capital Compliance because at that time the other three appellants, Music City, Steve Huffman, John Preston Thompson, were not party, I think had not been served at that point with the complaint and were not subject to that motion to compel that happened really years or months earlier. And so, but you're correct judge, in the magistrate judge's recommended decision, he said he granted the motion to compel in part and denied it in part but did say that if further issues occur then sanctions may be appropriate. But we still think under the Hathcock v. Navistar case you're entitled to under certain circumstances the court actually imposing a lesser sanction before you get to the extreme sanction of the default. So is it your view that that's a black letter rule that has to apply in each and every case? No judge, it clearly isn't. So why isn't that, why isn't this case the exception? Because we think under the circumstances, when you look at the case as a whole, it was when we filed our motion for summary judgment on the last day we were permitted to do so, we attached the plaintiff's deposition where she could not identify that any of the appellants had made these calls. Because she hadn't received discovery. That was her argument judge, but there had been. What discovery had been produced at this that time? Prior to that time on 31 occasions the appellants collectively or individually had answered and supplemented their discovery responses. On 31 occasions, I think the record will bear that out. 31 occasions doesn't mean that the appellants fully and completely responded to discovery. That's why there were 31 times probably supplementing because of the motion to compel and your continuing obligation to supplement discovery. You're entirely correct judge. Weren't there only 57 documents produced? That's correct judge and you're entirely correct. You know the the number of the supplemental responses still gives rise to the issue of whether they were substantive or not and whether they included everything. And clearly the district court found that they didn't. That there were these other pieces of litigation out there that didn't directly relate to this case but that the some of the appellants in one or more of were parties or somehow involved and the judge was the district judge was correct in finding you should have disclosed the pieces of litigation. You should have disclosed an investigation by the state of Oregon. You should have disclosed documents related to the disbarment of one of the appellants. We concede that. You're just saying that the judge should have given you another opportunity to supplement discovery and sanction you in some lesser way? What would the sanction have been? For example your honor the judge could have said look plaintiff you didn't take any depositions of the defendants. There was only one deposition taken and that was the defendants taking the plaintiff's deposition. Defendants I'm going to let the plaintiff take all of your depositions at your expense. I think that would have been perhaps an appropriate lesser sanction as a preliminary deterrent. And so procedurally though Judge Thacker the point I'm trying to make is that the district court imposed this sanction as the initial sanction and of course Judge Giz the court has discretion to do that but under the Hathcock decision the range of discretion I think is more language the court used. That's fair but you raised the point and I appreciate you doing that that this is a discretionary call with the with the court. It's not enough for us to say well if I'd have been the judge I might have done something different. So what is it about this case that suggests that this was an abuse of discretion? Because it's our position. There was no evidence linking these appellants. There was no evidence saying these appellants made the calls. But that's a merits determination. And I think you I think Judge Diaz you look at the totality of the circumstances I think as the district judge should have. And beyond that we have a plaintiff and I don't mean to denigrate her but this is what she does for a living. She brings these cases under the TCPA you know the the record. And what do your clients do for a living? They do a variety of things judge. And again I don't mean to make unwanted phone calls arguably. I mean that's the argument. That's what the appellee would say. That that's exactly right. Ain't it a great country. Excuse me. Ain't it a great country. So you did denigrate her. Well I didn't. I was just saying it was our position when you look at the record there are all these other cases she brought and then there's this issue of whether the calls themselves were actually unwelcome. So I see. You're saying she set you your clients up so that she could file another lawsuit against them? I don't want to put it that way Judge Thacker. But what I do want to say is we maintain that when Congress passed this statute the idea was to protect folks who didn't want to receive these calls. And we certainly would have Western District of Pennsylvania case Stoops that these calls were not unwanted within the meaning of the statute. Now that's a collateral issue. We recognize that. But under the circumstances we think the main issue is as we maintain the district court abuses discretion in imposing really the harshest sanction that could possibly be imposed. Thank you. Thank you Mr. Harris. Good morning your honors and may it please the court. It's great to see you. And I just want to say how much I appreciate the fourth circuit's commitment to holding arguments at law schools. I know it was a highlight of my time at law school when Judge Thacker, Judge King, and Judge Traxler came to WVU for arguments. So thank you for that. My name is Ben Hogan. I am I represent plaintiff athlete Diana Meg. This appeal presents the question of whether the district court abused its discretion by imposing sanctions in the form of default judgment after it first imposed lesser sanctions for egregious discovery abuses and violations of court orders. And then it only increased those things those sanctions when the defendants turned around and they did the same thing. What were the lesser sanctions? The lesser sanctions were well first they were on notice from the very first motion to compel and the order granting that where the magistrate judge said I'm not going to impose sanctions yet. Mr. Harris just joined the case. We're going to let him get up to speed. And then after the second and third motions to compel the district court we moved for a status conference. I think the background is important here. We moved for a status conference because the statute of limitations for egregious discovery had prohibited our abilities to meet the other deadlines in the court's order, expert disclosure deadlines, et cetera, and prepare our case for trial. And so we asked the judge for a status conference while the motions to compel were pending. And the sanctions, by the way, were requested striking their defenses in those motions to compel at the status conference. I'm sorry, before you get down the road here, do you think that the striking of defenses was that lesser sanction? Yes. What's the difference? I mean, effectively, they can't defend the case. Well, two responses, Judge Diaz. First, the rule provides for the striking of defenses as a sanction and or default judgment. So they're separate under the rules. So we can't assume that they strike your defenses. And then he said there's nothing left but to consider damage. When you put those together, that's a default judgment. Tell me how that's not a default judgment. I agree with you. You said just striking defenses. That's one matter. But to say the only thing left, and I think I'm just about to quote the judge, the only thing left is to consider damages. Why is that not on its face a default judgment? That's the question. Answer that question. So. The difference between the judge said we're going to have a jury trial on damage, the judge said what I said, the judge said, I'm striking your defenses, and then he said the only thing left is to consider damages. Am I wrong about that? I don't think so. OK, then answer that question. So the jury, the plaintiff would still have to put on her case at trial. A case of what? Damages. Of damage. And a default judgment, what do you have to put on? A case of what? Damages. Now tell me, that's not a distinction. Go ahead. Well, I don't think that there's a distinction without a difference there. Because the judge then later entered into a case of a default judgment. It doesn't matter that this we put a cherry on top of the cake that was already baked. He said your defenses are struck and the only thing left for damages and then two or three months later. Well, I'll call it. I'll name it what I said two or three months ago, but it was no need to. It made it very clear the only thing left damages. There's no way you can get around that counsel. Your Honor, I would submit that it still doesn't matter because the defendants were on notice at the. How were they on notice? What was the first time that the district court mentioned or the manuscript judge mentioned default judgment as a possibility? Well, I would back up to the very beginning of the case where two of the defendants who were Castle Law with one of the name defendants and Brea Associates and they are Judson Phillips was the authorized agent for those entities and. We tried to serve those entities. Mr. Phillips rejected the service attempts and then the judge entered default judgment against those entities and against Tristar Consumer Law, which is another spinoff of the defendants. And so from the outside of the case, default judgment was on the table. And then how was it on this? No, no, I'm just saying, but that's a little pedestrian. I mean, well, if you don't answer the complaint, not as on the table about the fall on your head. I mean, default judgment. How do you equate that with your indication engaged issue is joined and you're in discovery with just being on notice of the fall. Right. So I was I was going to get there, your honor. Oh, yeah. But there wasn't time to get there. The the motions to compel sought sanctions, although in that instance it was just striking their defenses. But the egregious conduct that gave rise to both the striking of their defenses and which gave rise to the entry of default judgment in the subsequent order is exactly the we had through the persistence of my colleague Sharon Iskra discovered droves of information that had not been produced that was clearly responsive and that was clearly ordered by the district court or by the magistrate court to be produced. Clearly nonresponsive to discovery. But how were they on notice that default judgment was a possibility? The rules. I would start with the rules. The rules speak for themselves. Every lawyer has an obligation to be aware of the rules and make sure that their clients are aware of the consequences of not complying with those rules. And, you know, here there was there was really no difference between the merits of the discovery abuses that happened in the first sanction striking their defenses and then the second sanction for default judgment. Even if you consider the first sanction striking their defenses and where the judge said, OK, we're only going to go on to jury to a jury trial and damages, it still. Was. Warranted by the same. So you have to convince us that the default judgment warranted. In the first instance. Even without any notice at all. That's been the harshest sanction, even without notice was sufficient in this case. Don't you agree that that's your burden here? So I don't think that I respectfully disagree that there wasn't any notice. Right. They were on notice for sanctions for the misconduct because it was egregious and it was, as the district court later explained, done in bad faith. And that's. That's a tautology in every case that you don't notice, because if you're late on something or you don't notice, it could be the default judgment. The rule 37 doesn't mean that way. That's not the analysis. And if I might add, the court didn't use its inherent power. It used rule 37. You think that made a difference in this case? I don't think it makes a material difference, but in the in the order striking defenses, which your honor is is suggesting equates to a default judgment, he did cite his in his inherent powers to impose sanctions for discovery abuses and other misconduct. And if if there is a case that warrants default judgment without express notice from the judge saying, hey, you don't pull it together, I'm going to enter default judgment. This is it. I'm not sure about that. Well, let's say I'm taking sides on one way or the other, but you since you made that argument. Should you consider the fact that your client was aware of some of these things that she was asking for? In terms of saying that you were in terms of egregious, seem to me the most egregious is taking the same kind of conduct, not being responsive. But the result is you left with a plaintiff has no clue of anything about the case. It will be bereft of anything about the case. So when you measure egregious, you use that term. Wouldn't that factor in what impact it had on a plaintiff who was somewhat well-versed in what these companies did and how they operate? As a matter of fact, just let me tell you what, if they had given me what I asked for, this is what you found. So am I right? Am I wrong about that? Is that right? You're partially right. And with due respect, you're partially wrong. OK, well, I take the wrong first. The wrong is this is just what we were able to discover that they hadn't produced. And we don't know all of the entities, for example, that were identified, that were created during the tendency of the litigation. There were at least 15 entities. We didn't get the opportunity to get financial records from them, tax documents. And in a TCPA case, just like many consumer cases, the goal is that these corporate shell games exist to evade liability. Right. And you have to, especially in a TCPA case, ultimately, what we needed and wanted to get were the call records and who was responsible for making these calls. And these alter ego joint enterprise and corporate bail piercing claims were just to get to that question and find out who made these calls so we can get the call records and prove our claim. That's sort of the flip side of the lack of notice argument that there's another Wilson factor, which is prejudice to your client. Could you speak to how you were prejudiced? Yes. That was my second point is that we didn't get to the prejudice is great because we didn't even get to request discovery that would go to the merits of our case because there is this ever changing web of corporate entities. And this is well established. I mean, Diana May is an experienced consumer advocate who knows how to bring these cases to bear and find out who's responsible for these calls. And all of these calls had these consistencies that pointed consistently to the defendants. And she, without that investigation, wouldn't even be able to bring this case in the first place. And the defendants, on the other hand, are engaging in the same type of conduct in other cases. Your points are well taken about it, but the problem is this that I have is that when you measure egregious, the most egregious thing, but a court having so much power is normally egregious, not necessarily because of the violation. It is that for the court to say, listen, you better get these answers in or I'm going to grant default judgment against you. Or the next time you come here, I'm going to grant $10,000 in attorney's fees or whatever. That's the egregious when you ignore those kinds of warnings, those kinds of things like that, and you do nothing. That's why when you measure egregious, that is a part of it. But when you don't have that, because this is the death penalty. I mean, in a civil case, when you have default judgment, that's the death penalty. Nothing else you can do. And so when you're in a case before us like this, where you don't have warnings, you have these things that you're right, well taken about impact. That's that's the question. And Your Honor, I would point to the mutual fund savings and loan versus Richard case, where I mean, this case is, is shockingly like that case where the defendants not only didn't respond to discovery, but their responses were incomplete. And the incomplete responses had to corporate identity, financial records, and the like, and the court imposed default judgment there. This case is not like the half pack case, where the court even recognized that in extreme cases where the where the conduct is done in bad faith, that the notice requirement is, is less of a concern, right? It's kind of a sliding scale. The half pack case didn't even the court said that you don't even need a rule 37 order, it can be the violation of a scheduling order alone, if the conduct rises to the level that it warrants default judgment. Mr. Harris, excuse me, Mr. Hogan, I didn't mean to interrupt you. But Mr. Harris made a distinction between the defendants who were in the case from the very beginning and those who came in later, I think trying to suggest that perhaps that the court were at all inclined to affirm that perhaps impairments wouldn't be appropriate as to those defendants. So what's your response to that? First, Your Honor, they're all represented by the same, same counsel, right? So the counsel is on notice that this kind of behavior is on the court's radar when it comes to producing discovery. And if you don't, if you don't comply with your obligations under the rules, sanctions are a potential, right? Second, these entities are so intertwined and entangled up that they're functionally the same. And by depriving us of discovery, the district court's orders result in them engaging a joint enterprise, I would point you to there's a chart from another case. It's a JA-130. And it's a web of these many of these defendants and all of the companies and corporate entities that they've created and shared and how they're interwoven, how they share addresses, how they share officer statuses. So the idea that they're separate is smoke and mirrors. So one other question is the district court did make a mistake with respect to one aspect of the basis for sanctions in suggesting that the defendants have not disclosed a particular piece of litigation, Westgate litigation. Can you speak to that? I mean, I suppose your argument is that there was there were so many acts of egregious misconduct that the fact that the court mistakenly identified another shouldn't make a difference. But I didn't mean to answer that question for you, but go ahead. Sure, Judge Diaz. So one, it doesn't matter because there was so much other egregious conduct. Two, the disclosure was not actually terribly clear. The citation was to a different case, but it did say Westgate. So again, we could go figure it out. But second, and to your point about the other defendants, Judson Phillips is the only person who provided that case in, I think, a supplemental disclosure, not their initial disclosure. And that case was never revealed by the other defendants who also had an interest in the, again, the corporate web of defendants that were in that case, in the Westgate case. So that's my response there. And I feel like it's very important to note that Judge Bailey has been on the bench for more than 15 years. He was appointed, he received his commission from President Bush. He's seen it all. Judge Bailey has never once, until this case, entered default judgment as a sanction. Well, he was clearly miffed, excuse me, clearly miffed with these parties. And at one point, I recall, and the plaintiffs filed a motion for reconsideration, and he said something to the effect of that there's a special place in hell for those lawyers who seek reconsideration. Does that suggest some kind of a perhaps improper bias or prejudice that was filtering into his decision-making? No, Your Honor. That is an old refrain that would often show up in a footnote, the first footnote of every motion for reconsideration that appeared in front of Judge Stamp, who is Judge Bailey's, who is now a senior judge, and the courthouse is actually not named after him. But it is kind of a, I don't want to say a joke in the Northern District of West Virginia, but it is akin to a joke. Local lore. Yes, it's local lore. And that's what Judge Bailey was referring to, and research will spell that out. I'm happy to write a 28-J letter the number of times Judge Stamp has said it. No, it was a quote from a man of all seasons, the whole play. The world construed by its width, court must construe by the law. And I'm not sure whether that is appropriate. Well, Judge Gregory, whether it's appropriate, I, you know, I'm not. You can finish what I'm saying. Oh, I'm sorry. I didn't mean to interrupt. The question is, everybody in front of the federal courts don't know what local idioms are. But they do know, and should know, what the law is, what is construed by that. So your answer to Judge Bailey's question is, you don't think that makes a difference? Correct. I don't think it makes a difference, and I don't think it came, it didn't play into Judge Bailey's analysis whatsoever. He applied this court's precedent in the Wilson case and other cases. And that was just, you know, I can't speak what Judge Bailey was intending, but it didn't infiltrate his analysis. And I think it was just a one-off reference to that. Well, see, the problem we have is that in terms of trying to construe the law in terms of Rule 37 here, is that a lot of things you're saying, and I understand you're taking the liberty to say a lot of things on behalf of your client. But the merits, you can't in both ways. You're dealing with the merits. But you're telling us how noble it is and how bad they were. How can we accept that? These are just discovery matters. They're really not for us in terms of merits, nor really to determine the merits of this question here. The question is based on what happened here. Was it appropriate, without notice, to give the ultimate punishment here of the false judge? And I understand lawyers do that, but you're going on about how bad they are. What their motives are, how they operate, and those things. And I think counsel on the other side made some reference about your client, and Judge Patrick sort of, I think, kind of indicated, well, are you dismerging her? I mean, so that's really not the question. So I think we try to keep it to what our job is, and in that sense, doing that. But we can't take what you say about the client, not say it's not true or not, but it's not before us. That's just discovery. That's just your plea at this point. That question. Then when you go back, you don't have to do anything. You don't have to prove their call at all. Well, who made the call? So I just think, you know, the Shakespeareans, I think, doubt the protest too much. It wasn't for us, and that's it. But anyway, you got a few minutes. I'll give you a minute, your last minute. Go ahead. Well, Judge Gregory, just like you said earlier, that when people come to the federal courts, they expect the federal courts to rule based on the law. When parties come to the federal courts as litigants and as lawyers, we are obligated to comply with the rules of discovery. If you could win cases like that, a plaintiff would never win a case. You have to comply with the rules of discovery, and you have to comply, and you're on notice from the beginning that if you don't, there might be consequences. And this court should not go to fresh springs of patience to look with hindsight at the misconduct that Judge Bailey rolled up his sleeves and reviewed nitty-gritty and pulled the issue of sanctions from the magistrate judge and did the work himself and said, this is beyond the pale. This crosses the line. Sanctions are warranted. And for that reason, under the abuse of discretion and clear error standard, this case should be affirmed and sent back to Judge Bailey for the issue of attorney's fees. Thank you. Thank you, Mr. Logan. Sarah, she has some time reserved. I have nothing further unless the court has specific questions. Yeah, I'm done. Thank you. I want to thank both of you, counsel, for your arguments here today. We appreciate it very much. They're very helpful for us to help us decide these cases. We're going to come down to you, counsel, and proceed to our next case.
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker